**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**_____ DIVISION**

Case No. _____

**ANTONIA DEMETROS**,
individually and on behalf
of all others similarly situated,

      Plaintiff,

v.

**VERTAFORE INC.**,
a Delaware corporation,

      Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Antonia Demetros, ("Plaintiff") brings this class action lawsuit on behalf of herself and all others similarly situated against Defendant Vertafore Inc. ("Defendant" or "Vertafore"), for its violations of the Driver's Privacy Protection Act, 18 U.S.C. §2721, *et seq.* ("DPPA").

### I.
### NATURE OF ACTION

1.    The DPPA prevents any state department of motor vehicles from releasing or using personal information about an individual obtained by the department in connection with a motor vehicle record. The DPPA requires that individuals provide their permission before their personal motor vehicle record may be sold or released to third-party marketers.

2.    The DPPA thus safeguards the personal information of licensed drivers from improper use or disclosure. It protects a fundamental property interest by ensuring that states

cannot impermissibly burden the right to travel by compelling the disclosure of sensitive, personal information that state departments of motor vehicles collected.

3.      Vertafore obtained, used, and redisclosed millions of  motor vehicle records obtained from the Florida Department of Highway Safety and Motor Vehicles without obtaining prior consent.

4.      This class action is brought by Plaintiff, individually, and on behalf of individuals whom suffered an invasion of a legally protected interest, and were victimized by these events, in order to redress the harm that they have suffered, and to obtain appropriate relief, concerned that Defendant Vertafore will continue to obtain, use, and re-disclose motor vehicle records in its possession.

## II.
## PARTIES

5.      Plaintiff Antonia Demetros is a natural person, citizen of the State of Florida, residing in Palm Beach County, Florida. Plaintiff Demetros is a licensed and registered driver in the State of Florida, and her motor vehicle records were obtained, used, and redisclosed within the Class Period, as defined herein, from the Florida Department of Highway Safety and Motor Vehicles ("FHSMV") by Defendant without authorization or written consent.

6.      Defendant Vertafore, a Delaware Corporation, headquartered in Colorado, doing business within the State of Florida during the Class Period.  Defendant Vertafore can be served with process by serving its registered agent: Corporation Service Company, 1201 Hays Street, Tallahassee, Florida, 32301.

**III.**
**JURISDICTION AND VENUE**

7.      As set forth herein, this Court has general jurisdiction over Defendant, a Delaware corporation doing business in the State of Florida, and original jurisdiction over Plaintiff's claims.

8.      This Court has subject-matter jurisdiction over their action pursuant to 28 U.S.C. § 1331, and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and there are more than 100 Class Members.

9.      There is minimal diversity of citizenship between proposed Class Members and Defendant, at least one class member is a citizen of a state different from Defendant and is a citizen of a foreign state. Plaintiff is a citizen and resident of Florida and asserts and claims on behalf of a proposed class whose members provided personal identifying information to the Florida Department of Highway Safety and Motor Vehicles.

10.     This court has Federal question jurisdiction as the complaint alleges violations of the Driver's Privacy Protection Act, 18 U.S.C.§ 2721, *et. seq.*

11.     Venue is proper in this district, and vests jurisdiction in the State of Florida and Federal Courts in this district, under 28 U.S.C. §1391(b) and (c) against Defendant. A substantial portion of the events and conduct giving rise to the violations of law complained of herein occurred within this state, and within this district because: (1) Defendant conducts substantial business in and throughout the State of Florida, and within this district; (2) Defendant obtained the database of Plaintiff and Putative Class Member's motor vehicle records from the Florida Department of Highway Safety and Motor Vehicles and in this district; (3) Defendant's management contracted with the Florida Department of Highway Safety and Motor Vehicles to

obtain Plaintiff and Putative Class Member's personal information, all of whom reside in Florida; (4) the wrongful acts alleged in this complaint were committed largely in Florida; and (5) Plaintiff and Putative Class Members were harmed in the State of Florida, and in this district.  Thus, this district is the appropriate venue for this action.

## IV.
## FACTUAL BACKGROUND

A.    **Defendant Vertafore Collects, and Rediscloses PII for its Financial Gain**

12.    Defendant Vertafore plays a central role in the modern American economy, collecting and selling vast amounts of data about the most intricate details of consumers' financial lives, connecting every point within the insurance distribution channel. The data—names, addresses, birthdates, social security numbers, drivers' license numbers, vehicle registration information, and more—contains the keys that unlock a consumer's identity, relied upon by third parties to make major financial decisions affecting almost all consumers.

13.    Defendant Vertafore reportedly provides a management system for data & analytics and distribution & compliance with integrated solutions for internal operations and information, including content management & workflow; rating & connectivity system to connect with partners across the insurance distribution chain, and as an insurance knowledge base.  Its areas of expertise include agency and benefits management, connectivity and rating, content management and workflow, producer lifecycle management,  and policy administration and billing.

14.    Operating as an Insurance Software Solutions for Carriers, Agencies Brokers, MGAs, and MGUs, Defendant Vertafore reportedly develops software for more than 20,000

Insurance agencies, some 1,000 carriers, and managing general agents.[1] Defendant Vertafore's software involves an agency management and content management integration system that links agency management system domain entities (such as clients, policies, claims, vendors) to content management system content hierarchical structures (such as client files, policy folders, claims folders, vendor files). Because the extension of insurance relies on access to consumers' insurance files, the insurance industry has been referred to as the "linchpins" of the financial system.

15.     Defendant Vertafore recognized that the value of its company was inextricably tied to its massive trove of consumer data. For that reason, Defendant Vertafore has aggressively acquired companies with the goal of expanding into new markets and acquiring companies with proprietary data sources. One such acquisition was QQ Solutions Inc.,[2] headquartered in Deerfield Beach, FL. Upon the acquisition, Defendant Vertafore became the surviving corporation of the merger, the separate existence of the subsidiary ceasing on August 31, 2015.[3]

16.     QQ Solutions Inc., reportedly a leading provider of innovative and powerful agency management systems, offered software products that included QQCatalyst®, an agency management technology tool that incorporated enterprise grade databases, and QQ WebRater, reportedly, a comparative rater product to provide real-time quotes from over 150 carriers.

---

[1]  Aug. 13, 2020 Form 99-1 (Aug. 13, 2020),
https://www.sec.gov/Archives/edgar/data/882835/000119312520218831/d82103dex991.htm.

[2] On July 20, 2009, QuickQuote, Inc. changed its name to QQ Solutions Inc. *See* Florida Department of State Articles of Amendment to Articles of Incorporation of Quickquote, Inc. (July 9, 2020),
http://search.sunbiz.org/Inquiry/CorporationSearch/ConvertTiffToPDF?storagePath=COR%5C2009%5C0724%5C00166316.Tif&documentNumber=K33031.

[3] Vertafore Acquires QQ Solutions (June 16, 2015),
https://www.vertafore.com/resources/press-releases/vertafore-acquires-qq-solutions.

17.     Defendant Vertafore's acquisition of QQ Solutions Inc. was premised upon its business model of aggregating vast amounts of data relating to consumers from various sources to create customer-concentric databases to facilitate its software, compiling that data in a usable format, and selling access to that information to those interested in making insurance decisions, and other entities that use those reports to make decisions about individuals in a range of areas. The source of data that fueled QQ Solutions Inc.'s technology, required for the actual continuous use of its software in order to maintain the integrity of the data, was the obtainment in bulk, on a continuous basis, of motor vehicle records,[4] (hereinafter referred to as "MVRs") held by the Florida Department of Highway Safety and Motor Vehicles, access and use of the data restricted by the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq.[5]

**B.      Defendant Vertafore was not an "authorized recipient" to obtain Plaintiff and Class Member's motor vehicle records.**

18.     Defendant Vertafore surreptitiously obtained Plaintiff and the Putative Class Member's motor vehicle records from the Florida Department of Highway Safety and Motor Vehicles, obtaining the records using QQ Solutions Inc's "account routing number", via an SFTP portal, using and redisclosing personal identifying information ("PII") to third parties, a continuous operation since 2015, an action without legal authority, violating the Driver's Privacy Protection Act, 18 U.S.C. §2721, *et seq*.

19.     Congress enacted the DPPA to restrict access to personal information of

---

[4] Driver's Privacy Protection Act defines "motor vehicle record" to mean any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles, 18 U.S.C. §2725(1).

[5] 18 U.S.C. § 2721(a)-(c). Section 2721(a) is applicable to state departments of motor vehicles. *See id.* § 2721(a). Pursuant to section 2721(b), personal information may be disclosed to certain entities by a state department of motor vehicles. *See id.* § 2721(b).

individuals[6] contained within motor vehicle records. One of the driving forces behind the passage of the DPPA was when an obsessive fan killed Rebecca Schaeffer, a television star, locating her home address from the DMV, using her license plate number to obtain her address, then he gunned her down on her doorstep. *See* 140 CONG. REC. H2,518, 2,522, 2,526 (daily ed. April 20, 1994) (statements of Reps. Moran and Goss). Through the DPPA, certain entities' class of data use are effectively "highly offensive" *per se.* Personal information, while legally available to state departments of motor vehicles, and authorized persons and entities, is to be held in trust by them, disclosable only for certain prescribed purposes. Disclosure to unauthorized recipients of this data is the trust which could be violated, subjecting persons to the risk that their data will be used against them. Further harm could take the form of something as mundanely annoying as junk mail or as serious as identity theft, stalking, or battery.

20.    The DPPA's general prohibition on disclosure of personal information was subject to fourteen (14) exceptions[7]—the permissible purposes—which allowed for the limited disclosure of personal information contained within motor vehicle records. The DPPA also provided for liability for the obtain[ment], disclos[ure], or [use] of such records for unauthorized uses- a course of action, and a body of information, that was protected from improper access by state and federal law.[8] Without remedy for its negligent use, consumer's security and privacy

---

[6] Generally, data released by the Florida Department of Highway Safety and Motor Vehicles to "Bulk Requestors," can include identification cards that are issued to *minor children.*

[7] One of the 14 exceptions is the Insurance Exception: "For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting."

[8] The Driver's Privacy Protection Act, 18 U.S.C. §2724(a) "sets forth the three elements giving rise to liability, *i.e.*, that a defendant (1) knowingly obtained, disclosed or used personal information, (2) from a motor vehicle record, (3) for a purpose not permitted. Plaintiffs allege that the Defendants have used their personal information in a manner that

would be violated by a multitude of companies—companies they have never heard of, companies

they have no relationship with, and companies they would never choose to trust with their motor

vehicle records, let alone their PII.

21.     QQ Solutions Inc. obtained bulk motor vehicle records from the Florida

Department of Highway Safety and Motor Vehicles, obtaining the entire database, then periodic

updates.[9] QQ Solutions, Inc.'s agreement to obtain the motor vehicle records from the Florida

Department of Highway Safety and Motor Vehicles, was referenced as the "Florida Department

of Highway Safety and Motor Vehicles Contract," a Memorandum of Understanding, ("MOU")

Driver License and/or Motor Vehicle Record Data Exchange, the contract identified as: DHSMV

Contract No: HSMV-0118-15, the contract was dated 9/25/2014, the term of the MOU-09/29/14-

09/29/2017.[10]

22.     The MOU included contact information, certification of use, obligations, and a

restriction which defined limitations as to acquisitions or mergers: "*Not assign, sub-contract, or*

*otherwise transfer its rights, duties, or obligations under this MOU without the express written*

*consent and approval of the Providing Agency.*" (DHSMV Contract No: HSMV-0118-15, page

---

is prohibited by the DPPA, fulfilling the three requirements of the irreducible constitutional minimum of standing: an injury in fact (*i.e.*, the invasion of an interest which is legally protected), which was caused by the Defendants, and which would be redressed by a judgment against the Defendants.

[9] The Florida Department of Highway Safety and Motor Vehicles release of MVRs involves a private-public partnership, TML Information Services, Inc. owns and operates the computer hardware and software that allows remote interactive access to the databases of the Providing Agency for the Requesting Party.

[10] A Florida Department of Highway Safety and Motor Vehicles' response to an openrecords request revealed QQ Solutions obtained bulk MVRs, which included Driver License Transcripts (3-year), and Driver License Transcript (7-year or complete). QQ Solutions was also permitted to conduct Driver Record Searches.

4, section 5). The Defendant ignored these contractual obligations and continued to surreptitiously obtain Plaintiff and the Putative Class Member's motor vehicle records from the Florida Department of Highway Safety and Motor Vehicles.

23.     While the effect of acquisition or merger permitted the Purchaser's successor in interest to be eligible to apply for obtainment of the MVRs, the MOU provided strict legal obligations required *prior to* purchasing a company which had previously acquired the motor vehicle record database.[11] The Purchaser's successor would be required to give timely notice of the planned acquisition, permit a representative of the Florida Department of Highway Safety and Motor Vehicles to determine if the successor had a DPPA permissible use to access the purchaser's MVR database of restricted consumer data; moreover, rule out any non-permissible uses such as direct marketing.[12] Since Defendant acts as a "Bulk Requestor", and a "Bulk Re-Seller," of the motor vehicle records, referencing a person or entity that obtains the entire database of motor vehicle records, and periodic updates, from State Department of Motor Vehicles, then rediscloses such in bulk to "authorized recipients." additional scrutiny would be applied.

C.     **Defendant Vertafore Knowingly "Re-Disclosed" Plaintiff and Class Member's motor vehicle records.**

24.     Defendant Vertafore re-disclosed Plaintiff and Class Member's motor vehicle records to its customers, the more than 20,000 Insurance agencies, some 1,000 carriers, and

---

[11]"This MOU may be subsequently amended by written agreement between the Parties. Any change, alteration, deletion, or addition to the terms set forth in this MOU and its numbered addendums must be by written agreement executed by both Parties." (*See* MOU, Section VIII, Amendments, pg. 6).

[12] For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains, 18 U.S. Code § 2721(b)(12).

managing general agents, occurring over a period of years, the unauthorized use and redisclosure continuing to date. This redisclosure was in violation of the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq. because Defendant Vertafore did not possess a legal right to obtain the Plaintiff and Class Member's motor vehicle records. Lastly, but most importantly, the unauthorized dissemination of Plaintiff and Class Member's motor vehicle records to third parties, a redisclosure in and of itself.

25.     The term "disclose" is first used in subsection (a), in the statutory prohibition on initial disclosures, 18 U.S.C. §Section 2721(a), "shall not knowingly disclose or *otherwise make* available to any person or entity personal information about any individual obtained by the department in connection with a motor vehicle record." In that section, the statute forbids a state DMV from "knowingly disclos[ing] or otherwise mak[ing] available to any person or entity" protected personal information. By attaching the terms "or otherwise make available" to the term "disclose" Congress intended to regulate the entire process of access to, and dissemination of, motor vehicle records. The statute's later use of the term "disclose," and of "redisclose," is a short-handed reference back to subsection (a). Congress' employed broad language to define and regulate disclosures intended to include within the statute's reach the kind of re-disclosure of PII that occurred here, namely, redisclosure of motor vehicle records from Defendant Vertafore to its customers, motor vehicle records not authorized to be obtained, and Defendant Vertafore permitting, or otherwise authorizing the electronic transfer of motor vehicle records to third-parties, a redisclosure.

26.     The terms "disclose" or "re-disclose" are also not limited as to take the act of publication of protected information outside the statute's reach because no specific recipient was involved in the occurrence. Defendant Vertafore's action, re-disclosing the motor vehicle records

to third-party servers, its customers, servers without adequate security, and servers susceptible to additional unauthorized access by unknown parties. This voluntary action, not knowledge of illegality or potential consequences, is sufficient to satisfy the mens rea element of the DPPA.

27.     One of Defendant Vertafore's software products, RiskMatch™, a product which claimed within its patent: "Methods are disclosed for providing leads for insurance market participants,"[13]  Such redisclosure of Plaintiff and Putative Class Member's MVR data as a ***direct marketing lead*** for insurance market participants was in violation of the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq.

### D.    Defendant Vertafore's Business Practices Harmed Plaintiff and Class Members

28.     As a result of the Defendant Vertafore's business practices, Plaintiff and the Class have been harmed, and shall be harmed, in several ways: (i) Defendant Vertafore knowingly obtained, used, and redisclosed Plaintiff and Class Members' personal information contained within motor vehicle records obtained from the Florida Department of Highway Safety and Motor Vehicles, without authorization, personal identifying information which is inherently sensitive, protected by Federal Statute, acts performed which violate the legislative intent of the U.S. Congress. and data that is immutable, once compromised, is compromised forever-as the legislative findings in the DPPA reflect. (ii) Plaintiff and Class Members have lost control of their protected personal data, failing to receive the benefit of data privacy and protection as promised when they provided their personal information to the Florida Department of Highway Safety and Motor Vehicles, their personal identifying information downloaded to servers of

---

[13] Syed, Kabir, U.S. Patent No: 8,666,788, Systems and methods for facilitating an insurance marketplace for negotiations among brokers and insurance carriers (Feb. 8, 2013).  Use of motor vehicle records, obtained from the State Department of Motor Vehicles, for direct marketing is strictly prohibited by the DPPA.

unknown third parties, authorized or not, by the Defendant, to servers, secured or not. (iii) Plaintiff and Class Members face an imminent and ongoing risk and fear involving not only their own personal security, but that of family members residing at their household.

29.     Defendant Vertafore's activities occurred throughout the State of Florida, knowingly *obtaining* the motor vehicle records of Plaintiff and the Class Members from the Florida Department of Highway Safety and Motor Vehicles accessing the QQ Solutions Inc/s SFTP portal- a course of action that was unauthorized, and a body of information that is protected from access and disclosure by federal law. These activities are undisputed by Defendant Vertafore. The heightened privacy and safety concerns generated by the obtain[ment], disclos[ure], or [use] of such records, without authorization, is apparent in U.S. law, creating restrictive consent standards.

30.     Plaintiff and the Class Members have a relevant interest as individuals to control information contained within motor vehicle records concerning their personal identifying information, the relevant harm if not protected, an invasion of their privacy. This intangible harm has a close relationship to a harm that traditionally provided a basis for suit in the Anglo-American legal system. In enacting the Driver's Privacy Protection Act, 18 U.S.C. §2721 et seq., Congress recognized the potential harm to privacy from the unauthorized access to drivers' personal information. This intangible harm associated with the violation of the DPPA's substantive protections is consonant with the common law tradition of lawsuits for invasion of privacy, an "Intrusion upon seclusion" or "intrusion into private affairs" interfering with a person's "zone of privacy." Without remedy, Plaintiff and Class Members will continue to be violated by Defendant Vertafore.

31.     Defendant Vertafore engaged in widespread commercial *usage,* knowingly using

Plaintiff and the Class Members' motor vehicle records, for its own benefit, without Plaintiff'
and Class Members' knowledge, authorization, or consent, nor that of the Florida Department of
Highway Safety and Motor Vehicles. Defendant Vertafore used its software to create databases
of Personal Information, derived in whole or part, from data contained in the motor vehicle
records, data afforded special attention due to the consequences that may flow from its re-
disclosure.  Further, through its practices, Defendant was able to raise its profile with many
companies, enabling Defendant to attract business, increase its prospective revenue, secure
investment funding, and thereby profit from its conduct described herein.

32.     Defendant Vertafore then knowingly *re-disclosed* Plaintiff and Class Member's
motor vehicle records within its software to third parties, knowingly redisclosing that data to
more than 20,000 Insurance agencies, some 1,000 carriers, and managing general agents.
Defendant Vertafore redisclosed Plaintiff and Class Member's Personal Identifying Information
within the agency management and content management integration system that links agency
management system domain entities (such as clients, policies, claims, vendors) to content
management system. Such conduct constitutes redisclosure, a highly offensive and dangerous
invasion of Plaintiff and the Class Member's privacy.

## VIII.
## CLASS ALLEGATIONS

33.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this
action on behalf of herself and a proposed class of similarly-situated individuals.

34.     Plaintiff Demetros seeks to represent a class involving all individuals that had
Defendant surreptitiously obtain their motor vehicle records obtained from the Florida
Department of Highway Safety and Motor Vehicles, without authorization or express written
consent, using QQ Solutions Inc.'s FTP access code to obtain such information, then using and

13

redisclosing such information to third-parties, seeking liquidated damages in the amount of $2500 each.

35.     Plaintiff seeks certification of the following class (the "Class"):

### FLORIDA CLASS

**All natural persons, who, on or after, four (4) years prior to the date of the complaint, through its final disposition, (the "Class Period") had Defendant Vertafore obtain their motor vehicle records from the Florida Department of Highway Safety and Motor Vehicles to use and re-disclose, without authorization or written consent, and seek liquidated damages in the amount of $2500 each, pursuant to 18 U.S.C. §2724(b)(1),** *et seq***.**

36.     Plaintiff reserves the right to revise these definitions of the class based on facts they learn as litigation progresses.

37.     Excluded from the class are the Defendant, its employees, officers, directors, agent, legal representatives, heirs, assigns, successors, individual or corporate entities acting within a partnership, joint venture, trust, association, union, subsidiaries, whether wholly or partially owned, divisions, whether incorporated or not, affiliates, branches, joint ventures, franchises, operations under assumed names, websites, and entities over which Defendant exercises supervision or control, or group of individuals associated in fact, although not a legal entity, or other legal entity, in addition to Plaintiff's  legal counsel, employees, and their immediate family, the judicial officers and their  immediate family, and associated court staff assigned to this case, and all persons within the third degree of consanguinity, to any such persons.

38.     Certification of a class under Fed. R. Civ. P. 23 is appropriate because Plaintiff and the putative Class Members have satisfied Rule 23's requirements, questions of law and fact that are common to the Class that predominate over any questions affecting only individual members of the Class, and a class action is superior to all other available methods for fair and

efficient adjudication of this controversy in fact, the wrongs suffered and remedies sought by Plaintiff and the other members of the Class are premised upon the same evidence.

39. **Numerosity: Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. Plaintiff is informed and believes there are millions of Class Members. Those individuals' names and addresses identified in the Class definitions are identifiable from the information and records in the custody of the Defendant and Florida Department of Highway Safety and Motor Vehicles, which provided motor vehicle records to Defendant, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.[14]

40. **Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** As to the Class, this action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including:

   a. whether Defendant Vertafore *obtained* Plaintiff and Class Member's motor vehicle records from the Florida Department of Highway Safety and Motor Vehicles, without authorization or express written consent, surreptitiously using QQ Solutions Inc.'s FTP access code to obtain such information, then using and redisclosing such information to third-parties.

   b. whether Defendant Vertafore acted *knowingly* when Defendant Vertafore obtained Plaintiff and Class Member's motor vehicle records from the Florida Department of Highway Safety and Motor Vehicles, without authorization or express written consent, surreptitiously using QQ Solutions Inc.'s FTP access code to obtain such information, then using and redisclosing such information to third-parties.

   c. whether Defendant Vertafore *qualified* for a DPPA permissible use when Defendant Vertafore obtained Plaintiff and Class Member's motor vehicle records from the Florida Department of Highway Safety and Motor Vehicles, without authorization or express written consent, surreptitiously using QQ Solutions Inc.'s FTP access code to obtain

---

[14] The proposed Florida Class is estimated to be about 17 million residents.

such information, then using and redisclosing such information to third-parties.

d.  whether Defendant Vertafore's conduct described herein violates the Driver's Privacy Protection Act, 18 U.S.C. §2721.

e.  the nature and extent of Plaintiff' and Class Member's statutory damages, liquidated damages of $2500.00, that Defendant is liable for, and legally obligated to Plaintiff and Class Members.

f.  whether Plaintiff and Class Members are entitled to appropriate injunctive relief against Defendant Vertafore; and

g.  whether punitive damages are appropriate.

41.  **Typicality: Federal Rule of Civil Procedure 23(a)(3).** As to the Class, Plaintiff' claims are typical of other Class Members' claims because Plaintiff and Class Members are subjected to the same allegedly unlawful conduct and damaged in the same way.

42.  **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate class representative because her interests do not conflict with the interests of Class Members who they seek to represent, and Plaintiff intend to prosecute this action vigorously. Plaintiff have retained counsels competent and experienced in complex class action litigation. The Class Member's interests will be fairly and adequately protected by Plaintiff and their counsels.

43.  **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).** Defendant Vertafore's conduct, as complained of herein, is generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant Vertafore. Such individual

actions would create a risk of adjudications that would be dispositive of the interests of other Class Members and impair their interests. Defendant Vertafore has acted and/or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate.

44.    **Superiority: Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant Vertafore, so it would be impracticable for Class Members to individually seek redress for Defendant Vertafore's wrongful conduct. Even if Class Members could afford the cost of litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

45.    **Issue Certification: Federal Rule of Civil Procedure 23(c)(4).**   In the alternative to certification under either Rule 23(b)(2) or Rule 23(b)(3), an action may be brought pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure for particular issues of law and fact, which are common to the class, that will drive the ultimate resolution of the action.

## CAUSE OF ACTION
## FIRST CAUSE OF ACTION

**Violations of the Driver's Privacy Protection Act, § 18 U.S.C. § 2721, *et. seq*.**
**(On Behalf of the Plaintiff and the Putative Class against Defendant)**

46.     Plaintiff realleges, and incorporates by reference, all preceding allegations as if fully set forth herein.

47.     As set forth herein, Defendant violated the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et. seq*. by engaging in the acts alleged in this complaint.

48.     Driver's Privacy Protection Act, 18 U.S.C. §2721, *et seq.*, "Prohibition on release and use of certain personal information from State motor vehicle records," regulates persons or entities' obtainment and re-disclosure of personal information gathered by State Departments of Motor Vehicles. Driver's Privacy Protection Act creates a private cause of action for a "person" whose personal information was knowingly obtained, disclosed, or used, from a motor vehicle report, "for a purpose not permitted under This chapter," 18 U.S.C. § 2724(a).

49.     Driver's Privacy Protection Act regulates representations made to Florida Department of Highway Safety and Motor Vehicles by persons or entities requesting access to motor vehicle records," False Representation.—It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record", a violation of 18 U.S.C. §2722 (b).

50.     Driver's Privacy Protection Act defines "motor vehicle record" to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles," 18 U.S.C. §2725(1). Defendant Vertafore obtained motor vehicle records from the Florida Department of Highway Safety and Motor Vehicles. Plaintiff and Class Members' motor vehicle records and constitute

18

"motor vehicle record[s]" as defined by the Driver's Privacy Protection Act.

51.     Driver's Privacy Protection Act defines "person" to mean "an individual, organization or entity," 18 U.S.C. §2725(2). Defendant Vertafore is an organization. Plaintiff and Class Members are "person[s]" as defined by the Driver's Privacy Protection Act.

52.     Driver's Privacy Protection Act defines "personal information" to mean "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status," 18 U.S.C. §2725(3). Plaintiff and Class Members' motor vehicle records were obtained by Defendant Vertafore and constitute "personal information" as defined by the Driver's Privacy Protection Act.

53.     Defendant violated the Driver's Privacy Protection Act, § 18 U.S.C. §2721 et seq., making false representations to the Florida Department of Highway Safety and Motor Vehicles as set forth herein, knowingly obtaining, using, and re-disclosing millions of motor vehicle records of the Plaintiff and Class Members' motor vehicle records, without authorization or written consent. surreptitiously using QQ Solutions Inc.'s FTP access code to obtain such information, then using and redisclosing such information to third-parties. Defendant Vertafore continued to knowingly obtain, use, and re-disclose the motor vehicle records, falsely representing to the Florida Department of Highway Safety and Motor Vehicles it was an "authorized recipient," a violation of 18 U.S.C. §2722 (b).

54.     Driver's Privacy Protection Act describes the term "disclose" in subsection (a), statutory prohibition on initial disclosures, "shall not knowingly disclose or *otherwise make available* to any person or entity personal information about any individual obtained by the

department in connection with a motor vehicle record," 18 U.S.C. §Section 2721(a). The statute's later use of the term "disclose," and of "redisclose," is a reference back to subsection (a). Nondisclosure of personal information is the default rule. See 18 U.S.C. § 2721(a) (In general, the DPPA never explicitly listed any prohibited uses; rather, it prohibited disclosure of personal information except the fourteen permissible uses enumerated in section 2721(b)).

55.    Plaintiff and the Class have suffered harm, as alleged herein, and pursuant to 18 U.S.C. § 2724(b)(1), are entitled to actual damages, but seek only liquidated damages in the amount of $2,500 each.

56.    Plaintiff and the Class, pursuant to 18 U.S.C. § 2724(b)(1), are also entitled to preliminary, equitable, and declaratory relief, punitive damages, reasonable attorneys' fees, and Defendant's profits obtained from the above-described violations. Unless restrained and enjoined, Defendant will continue to commit such acts. Plaintiff's remedy at law is not adequate to compensate her for these inflicted and threatened injuries, entitling Plaintiff to remedies including injunctive relief as provided by 18 U.S.C. § 2724(b)(1).

57.    All of the acts and activities of Defendant, as described herein, were performed knowingly.

58.    As a direct and proximate result of the aforesaid acts and activities of Defendant, Plaintiff have been caused to sustain harm thereby, and seek redress thereof.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, respectfully prays for judgment against Defendant as follows:

      a.  For an order certifying that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

b.  For an order designating Plaintiff as representative of the class and the undersigned as class counsel;

c.  For a declaration that Defendant's actions violated the Driver's Privacy Protection Act, 18 U.S.C. § 2721, and for liquidated damages, but not less than liquidated damages in the amount of $2,500 for each Plaintiff and each member of the Class and remedies available as a result of Defendant's violations of the DPPA;

d.  Injunctive relief as appropriate and determined by the Court;

e.  Costs and expenses of the litigation and reasonable attorneys' fees;

f.  For pre- and post-judgment interest as allowed by law; and

g.  For such other relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Dated: July 30, 2021

Respectfully submitted,

*/s/ Eli J. Hare*
Adam J. Levitt (to file for admission *Pro Hac Vice*)
Amy E. Keller (to file for admission *Pro Hac Vice*)
James Ulwick (to file for admission *Pro Hac Vice*)
Eli J. Hare (FL Bar. No. 1021401)
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
julwick@dicellolevitt.com
ehare@dicellolevitt.com

Joseph Malley (to file for admission *Pro Hac Vice*)
**LAW OFFICE OF JOSEPH H. MALLEY, P.C.**
1045 North Zang Boulevard
Dallas, Texas 75208
Telephone: (214) 943-6100
malleylaw@gmail.com

*Counsel for Plaintiff Antonia Demetros,*
*individually, and on behalf of a class*
*of similarly situated individuals.*

21